### INTERNATIONAL PAPER COMPANY *vs.* GAZETTE COMPANY & another.

Suffolk.    December 1, 1902. — February 25, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Corporation*, Liability of officers.

In order to hold an officer of a corporation liable for its debts, under Pub. Sts. c. 106, § 60, on the ground that he signed a certificate required by law knowing it to be false, bad faith on the part of the defendant must be shown.

In a suit in equity to hold the president of a corporation liable for its debts, under Pub. Sts. c. 106, § 60, on the ground that he signed a certificate required by law knowing it to be false, it appeared, that the corporation was formed by changing a Maine corporation into a Massachusetts corporation, each step being taken under advice of counsel, that the president had signed a certificate that the whole amount of the capital stock had been paid in in full and had been invested by depositing it in a certain bank, that when this certificate was filed the president knew that there was a credit in the bank to the amount of the capital stock, but also knew that it was placed there in order that a check drawn upon it for the full amount of the account should be exchanged for the president's note to the bank, which afterwards was done, that before making the certificate the president sought the advice of counsel and was told that the transaction was

a compliance with the provision of the statute requiring the capital stock to be paid in, and that he made the statement contained in the certificate in good faith. *Held,* that, even assuming that the certificate was false, there was no evidence of bad faith and the president could not be held liable.

BILL IN EQUITY, filed November 8, 1901, to hold the defendant Chase, the president and a director of the defendant Gazette Company, liable for the debts of that corporation, under Pub. Sts. c. 106, § 60, on the ground that he signed a certificate required by law knowing it to be false.

The case came on to be heard before *Lathrop*, J., who at the request of the parties reserved it upon the pleadings and an agreed statement of facts for the consideration of the full court, such decree to be entered as equity and justice might require.

The agreed facts were as follows: In 1896 the defendant Chase and other persons acquired the stock of the Gazette Company of Maine, a Maine corporation, having a paid in capital stock of $55,000. In April, 1898, it was determined by the stockholders of this Maine corporation, to be for the best interest of the company and its stockholders, to change the company into a Massachusetts corporation, and by unanimous consent of the stockholders of the Maine corporation the change was effected as follows: The Massachusetts company was organized under the name of The Gazette Company, with a capital stock of $44,000, divided into four hundred and forty shares of $100 each. The defendant Chase borrowed from the Worcester National Bank $44,000 on his personal promissory note. At the same time an account was opened in the Worcester National Bank for The Gazette Company of Massachusetts, and the $44,000, the proceeds of the note, were credited to that account in payment for the four hundred and forty shares of the Gazette Company of Massachusetts. These things were done on April 26, 1898. David B. Howland was treasurer of the Maine corporation and also of the Massachusetts corporation. The defendant Chase was a director of the Worcester National Bank, a director and stockholder of the Maine corporation, and a director and stockholder and president of the Massachusetts corporation. The certificate of payment of capital in cash was filed in the office of the secretary of the Commonwealth on April 27, 1898.

The Gazette Company of Maine then made a bill of sale to Charles A. Chase, David B. Howland, and John H. Jewett of all its assets, consisting of printing appliances, machinery, materials, supplies, and business and good-will, subject to debts of about $19,000. The directors of the Gazette Company of Massachusetts, at a meeting on April 29, 1898, passed the following vote: " Voted to purchase of C. A. Chase, D. B. Howland, and J. H. Jewett, all of Worcester, all their right, title, and interest in certain presses, type, type-setting machines, and other machinery, fixtures, furniture, paper, stock, materials, supplies, cash, accounts due and credits, franchises, and good-will of business and all the personal property and assets of every name and nature, recently purchased by said parties from ' The Gazette Company,' a corporation of the State of Maine ; and to pay therefor the sum of $44,000 and to agree in consideration of such sale and transfer to assume and pay all existing debts of The Gazette Company, the said Maine Corporation, and to assume and perform all existing contracts of said Maine Corporation, as far as said Maine Corporation is legally bound to perform the same ; and the President and Treasurer are hereby authorized and directed to make said payment and in the name of the Company to execute all papers necessary to carry out this vote." In accordance with this vote a bill of sale was made to the Gazette Company of Massachusetts, and on April 29, 1898, a check was drawn on the Worcester National Bank to the order of Charles A. Chase for $44,000 signed " The Gazette Company of Massachusetts, David B. Howland, Treasurer." This check was not presented for payment to the Worcester National Bank until May 17, 1898. It was indorsed, " pay to the order of the Gazette Company of Maine, Charles A. Chase," and given to David B. Howland, treasurer of the Gazette Company of Maine, by the defendant Chase. Mr. Howland indorsed the check, " The Gazette Company of Maine, David B. Howland, Treasurer," and gave it to the defendant Chase, who passed it to the Worcester National Bank in settlement of his note for that amount. The stockholders of the Maine company then received from the defendant Chase four shares of the Massachusetts company for every five shares held by them in the Maine company. No payment of the capital stock of the Gazette

Company of Massachusetts was made except as above stated, and no check was drawn by the Gazette Company of Massachusetts against the credit of $44,000 other than the check above mentioned. It was agreed, that the defendant Chase might be considered to have proved, if admissible, against the objection of the plaintiff, that he acted under and in accordance with the advice of counsel in all these transactions.

*F. T. Benner*, for the plaintiff.

*G. T. Dewey*, for the defendants.

HAMMOND, J. Upon the facts agreed there can be no reasonable doubt that the only ultimate object of the various steps taken was to change the Maine corporation to a Massachusetts corporation, with its capital stock reduced one fifth. There was no actual sale of anything because the sellers were in substance the buyers; nor was there any change in the assets or liabilities. At the end of the transaction each stockholder had the same relative interest in the property as before. All this was intended from the first, and each step, including the opening of the account in the bank to the credit of the Massachusetts corporation, was taken solely to carry out this intention. If, therefore, the defence rested entirely upon the proposition that the certificate that the whole amount of the capital stock had been paid in in cash and had been invested by depositing it in the bank was true, there would seem to be a pretty clear case for the plaintiff.

But even if it be assumed that the certificate was false, the bill cannot be maintained against the defendant Chase unless it also appears that he knew it to be false. There can be no doubt that he knew all the facts and the purpose of all the transactions. While it is true that at the time the certificate was filed he knew that there was a credit in the bank to the amount of the capital stock, he also knew that it was not placed there for any other purpose than that for which it was finally used, namely, that a check to be drawn upon it for the full amount of the account should finally be exchanged for Chase's note to the bank.

The statute is penal in its nature and is to be strictly construed. It is intended to punish wilful falsehood. There must be *mala fides*. *Stebbins* v. *Edmands*, 12 Gray, 203. *Felker* v. *Standard Yarn Co.* 150 Mass. 264. It is agreed that in all these

matters. Chase acted under and in accordance with the advice of counsel. We understand by this that this business of changing one corporation into the other was supervised by counsel, that the nature of the steps to be taken and the manner of taking them in order that there should be a full compliance with our laws was left to his direction, and that everything was done as he advised. One of the questions arising was whether under the circumstances the opening of the account in the bank to the credit of the new corporation was a compliance with the statute as to the payment of the capital in cash. Upon this Chase sought advice and was told that it was a compliance and that the capital stock had been so paid in within the meaning of the statute. Having been so advised on this question and as to making the certificate to that effect, he made it accordingly. The question before him was one of the construction of a statute, a legal question, and, whatever may be thought of the soundness of the advice under which he acted, we cannot say that he did not act in good faith. It would be hard to say that a man is to be held to *mala fides* simply because, acting in accordance with the opinion and advice of his counsel learned in the law, he in good faith makes a statement as true which upon a correct interpretation of the law is not true.

*Bill dismissed.*