STRATTON v. ANDERSON.

1. CORPORATIONS—DELAWARE—UNLAWFUL DIVIDENDS—FINDINGS OF COURT.

In action by trustees in bankruptcy of Delaware corporation against a director to recover dividends claimed to have been unlawfully and negligently declared by, and paid out of funds of, the corporation, finding of trial judge that there were no assets from which dividends could lawfully be declared *held*, supported by record (Rev. Code Delaware 1915, § 1948, as amended by 36 Delaware Laws, Chap. 135, § 16).

2. SAME—DIRECTORS—LIABILITY FOR UNLAWFUL DIVIDENDS.

Director of Delaware corporation, who was not a member of its executive committee nor in attendance at certain directors' meetings at which action was taken that resulted in shading the books and is not shown to have known of such action before commencement of instant action by trustees in bankruptcy of the corporation, *held*, not liable for dividends unlawfully declared, where he relied in good faith upon books of account showing assets from which a dividend could properly be declared, then available reports and oral assurance of president that corporation, subsequent to such reports, was in good financial condition (Rev. Code Delaware 1915, § 1948, as amended by 36 Delaware Laws, chap. 135, § 16; § 1949, as amended by 35 Delaware Laws, chap. 85, § 17).

3. SAME—DELAWARE—DIVIDENDS—DIRECTORS—GOOD FAITH—ADVICE OF COUNSEL.

Evidence that dividend of a Delaware corporation was declared by directors from moneys received from sale of certain territorial franchise rights, upon advice of legal counsel that such dividend would be perfectly legal, *held*, to negative any bad faith upon part of defendant director and sanction finding such vote was made in good faith and without negligence and to absolve defendant from liability in suit, by trustees in bankruptcy of corporation, to recover dividends alleged to have been declared unlawfully (Rev. Code Delaware 1915, § 1948, as amended by 36 Delaware Laws, chap. 135, § 16; § 1949, as amended by 35 Delaware Laws, chap. 85, § 17).

Appeal from Wayne; Vanderwerp (John), J., presiding. Submitted October 9, 1936. (Docket No. 69, Calendar No. 39,140.) Decided December 28, 1936. Rehearing denied March 2, 1937.

Action by Leslie M. Stratton and others, trustees in bankruptcy of Clarence Saunders Stores, Incorporated, against Wendell W. Anderson to recover dividends claimed to have been paid unlawfully. Judgment for plaintiffs. Defendant appeals. Reversed without a new trial.

*Joslyn, Joslyn & Joslyn* (*Henry J. Livingston* and *Glenn C. Gillespie,* of counsel), for plaintiffs.

*Beaumont, Smith & Harris,* for defendant.

Toy, J. The plaintiffs, as trustees in bankruptcy of the estate of Clarence Saunders Stores, Incorporated, brought this action against defendant, one of the directors of the bankrupt corporation, to recover the amount of dividends claimed to have been unlawfully and negligently declared by and paid out of the funds of the corporation. The trial court after trial without jury found for plaintiffs and entered judgment against defendant in the sum of $83,178.33, which encompassed the dividend declared July 27, 1929, in the amount of $31,787.96, the dividend declared October 22, 1929, in the amount of $31,787.90, together with the items of interest thereon. Defendant appeals.

The liability sought to be imposed upon defendant is based upon the statutes of the State of Delaware, under which the corporation was incorporated, as well as the common law.

Section 34 of the general corporation law of the State of Delaware (Rev. Code Delaware 1915, § 1948,

as amended by 36 Delaware Laws, chap. 135, § 16) contains provisions authorizing the directors of corporations, created under that act, to declare and pay dividends either out of its net assets in excess of its capital, or, if no such excess exists, out of its net profits for the fiscal year then current and/or the preceding fiscal year. It also contains the following proviso:

"A director shall be fully protected in relying in good faith upon the books of account of the corporation or statements prepared by any of its officials as to the value and amount of the assets, liabilities and/or net profits of the corporation, or any other facts pertinent to the existence and amount of surplus or other funds from which dividends might properly be declared and paid."

Section 35 of such act (Rev. Code Delaware 1915, § 1949, as amended by 35 Delaware Laws, chap. 85, § 17) contains the provision that:

"In case of any wilful or negligent violation of the provisions of this section, the directors under whose administration the same may happen shall be jointly and severally liable, in an action on the case, at any time within six years after paying such unlawful dividend, to the corporation and to its creditors, or any of them, in the event of its dissolution or insolvency, to the full amount of the dividend so unlawfully paid, with interest on the same from the time such liability accrued."

It is upon this last above quoted section that the trial judge, in his finding, based the liability of defendant.

In his opinion the trial judge found that there were no "funds, earnings or profits, at the time of the meetings of July 15, 1929, and October 22, 1929, from which any dividends could be or should have been declared and paid."

Rather than make a summary of the voluminous testimony in this regard as set forth in the record, we quote from such a compendium made by the circuit judge in his opinion denying a motion for new trial, which summarization, we think, sufficiently covers the situation, and which is as follows:

"As of April 19, 1929, the amount that had been paid by the Clarence Saunders Stores, Inc., for merchandise in those stores which it had purchased amounted to approximately $684,000. It appears from the minutes of a meeting of the executive committee held on that day that the following took place:

" 'The chairman called attention to the fact that, in the purchasing of the several units of stores acquired by the company, that a price had been paid for such merchandise in excess of its real market worth; that in some cases such excess was much higher than in other cases; that, in addition thereto, considerable of the merchandise thus acquired was of such a miscellaneous assortment that many price reductions had to be and were made to sell such stock and that, because of this fact, the operations of the stores would be greatly handicapped and would not, over the first few months' business, made [make?] as accurate a showing unless some adjustment was made of the purchase price paid for such merchandise.'

"After some general discussion, the following resolution was passed:

" 'Resolved, that such a flat deduction be made of 10 per cent. from all merchandise inventories as of date of purchase, and that said deduction be charged to franchise rights account, and that such entries as should be necessary to correct the books of the committee to reflect this action of the executive committee be made; said entries to be made as of March 31st.'

"In accordance with this resolution the asset account of franchise rights was increased by the sum of $68,416.62, and the profit and loss account on the profit side was likewise increased by the sum of $68,416.62.  *  *  *  (The dividend declared July 15th was based on the foregoing action of the executive committee.)

"On October 22, 1929, the board of directors passed a resolution, favorably voted upon by the de-

fendant, authorizing the sale by the Clarence Saunders Stores, Inc., to Clarence Saunders Pacific Company [Clarence Saunders Pacific Stores, Inc.], of certain territorial franchise rights for the sum of $105,000. * * * The license rights sold were acquired by the Clarence Saunders Pacific Stores, Inc., as part consideration for the issuance of 100,000 shares of class 'B' common stock. Moreover, at no time did the board of directors transfer any portion of the capital, represented by the proceeds of this sale, to the surplus amount [account?].'' (Upon this situation the dividend of October 22d was based.)

Without these manipulations, (as above outlined) there were no net assets in excess of capital nor any net profits (as provided in section 34 of the Delaware general corporation law, as amended) from which the board of directors had power to declare and pay dividends on these two stated occasions.

We shall discuss the respective dividends separately.

1. The dividend of July 15th.

We believe the record fully sustains the finding of the trial judge that as to the dividend of July 15th, there were no proper assets or profits of the corporation from which a declaration of dividends could then lawfully be made and that such declaration and subsequent payment thereof was from capital and was in violation of the provisions of the Delaware corporation statute.

This conclusion leaves but one question, namely, whether the defendant, as one of the board of directors, in voting for the declaration and payment of this particular dividend, *relied in good faith,* ''upon the books of account of the corporation or statements prepared by any of its officials as to the value and amount of the assets, liabilities and/or

net profits of the corporation, or any other facts
pertinent to the existence and amount of surplus or
other funds from which dividends might properly
be declared and paid." If he did he is "fully pro-
tected" by the provision of the statute above quoted
and is not liable in the instant suit for the violation
by the board of directors of the provisions of the
Delaware statute in declaring such dividend; if he
did not, then such liability exists.

The defendant was not a member of the executive
committee, nor was he present at its meeting of
April 19th when its resolution, hereinbefore quoted,
making a 10 per cent. flat deduction of all merchan-
dise inventories was passed. Neither was he pres-
ent at the next directors' meeting (June 5th), nor do
the minutes of such directors' meeting disclose the
making of such a report by the executive committee.
There is no testimony that, prior to the commence-
ment of this action, defendant ever had any knowl-
edge of this stated action of the executive commit-
tee, whereby the books of the corporation had been
shaded.

On April 27th, the corporation forwarded a com-
munication to its stockholders signed by Clarence
Saunders, its president (defendant receiving the
same), which after reciting the progress made by
the corporation, stated that "profits after deprecia-
tion, for the period ending March 31st, totaled
$173,809.23."

Prior to the meeting of the board of directors on
July 15th, there had been prepared by the officials
of the corporation, operating statements covering
the operations of the corporation through April and
May; also balance sheets as of April 27th and June
1st. These operating statements disclose a profit
to the corporation in April of $8,239.18 and a loss

in May of $14,953.64. The balance sheet of April 27th disclosed profits after the February dividend in the amount of $149,548.41, while the balance sheet as of June 1st showed a profit after the dividends of February 1st and May 1st, of $102,694.77. This latter balance sheet was the latest statement of the financial condition of the corporation prepared and issued by the officials of the corporation prior to the July meeting. There is testimony that the balance sheet for the month of June had not been prepared due to a change of method in bookkeeping effected after June 1st, which made it impossible to properly assemble and prepare such a statement at that time, at least, defendant was so informed. However, the testimony indicates that Saunders, the president, reported that the affairs of the corporation for the month of June were in a satisfactory condition. As a matter of fact, there had been a loss in this month of several thousand dollars, but the testimony shows that defendant had no knowledge thereof until some time after the July meeting.

Defendant, according to the testimony, relied upon the reports of the corporation, showing operations and balances as of April 27th and June 1st, as well as the verbal report of its president made at the meeting of July 15th, when voting the dividend of that date. This testimony is uncontradicted. True, he did not have before him the report for the month of June, but its absence had been explained, and in addition he had the oral statement of the president of the corporation indicating a satisfactory condition of the company for June. He had not been advised, nor was he aware of the shading of the books of the company prior thereto. The official balance sheet as of June 1st showed profits of $102,694.41. On its face, such a showing war-

ranted the declaration of dividends. Relying thereon and upon the report of the president, in good faith, the defendant is fully protected, by the terms of the above cited statute, from the liability which arose because of the declaration and payment of the dividend of July 15th. The trial court was therefore in error in finding against defendant for the amount thereof with interest.

2. The dividend of October 22d.

The Supreme Court of Delaware, in *Sohland* v. *Baker*, 15 Del. Ch. 431 (141 Atl. 277, 58 A. L. R. 693), said:

"Broadly speaking, the capital of a corporation is the fund used by it in the conduct of its business and from which its profits, in a good measure at least, are expected to be made. This fund is raised by the issue and sale of its authorized capital stock."

To apply such definition in the instant case, would, to say the least, raise serious doubt as to whether the dividend of October 22d was declared from capital, but we find it unnecessary to make such determination, for assuming that it was, as plaintiffs claim, declared and paid from capital, we find that the defendant acted in good faith and without negligence in voting therefor.

The sum of $105,000 from which the dividend involved was declared and paid was received by the corporation from the sale of certain territorial franchise rights to the Clarence Saunders Pacific Stores, Inc., another corporation.

At the directors' meeting of October 22d, the matter of declaring a dividend from the money so acquired was discussed in great detail in the presence of counsel of the corporation—Mr. Miller and Mr. Owen of the law firm of Hornblower, Miller and Garrison of New York.

The witness Feltes, a director of the corporation, testified:

"*Q.* And what was the advice of your counsel as to the use of this money· for the payment of dividend?

"*A.* That it could be done.

"*Q.* Yes.

"*A.* Perfectly legal."

The defendant testified:

"*Q.* Do you recall whether or not they were asked to advise the board as to anything concerning the sale of the right to acquire franchise rights that were under debate to be sold that day?

"*A.* Yes, they rendered an opinion.

"*Q.* And what was that?

"*A.* To the effect that we had a perfect right to sell the franchises, or rather the rights to the franchises, and that upon the sale of those franchise rights, the resulting moneys accruing to the corporation would be profit."

The foregoing quoted testimony relative to advice of counsel is uncontradicted. We cannot ignore it. Not only does it negative any bad faith upon the part of defendant in voting for the dividend following the receipt of this advice, but it sanctions a finding by us that such vote was made in good faith and without negligence. *International Paper Co.* v. *Gazette Co.,* 182 Mass. 578 (66 N. E. 636); *Harvey-Watts Co.* v. *Worcester Umbrella Co.,* 193 Mass. 138 (78 N. E. 886).

So determining, we find no liability therefor upon defendant.

The judgment of the court below is reversed without a new trial, with costs of both courts to defendant.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL and SHARPE, JJ., concurred. POTTER, J., did not sit.