HATFRIED, Inc., et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9180.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 21, 1946.

Decided June 11, 1947.

GOODRICH, Circuit Judge, dissenting in part.

———◆———

Abraham L. Shapiro, of Philadelphia, Pa., and Louis Stein, of Union City, N. J. (Shapiro & Shapiro, of Philadelphia, Pa., on the brief), for petitioners.

Irving I. Axelrod, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., A. F. Prescott, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before GOODRICH and KALODNER, Circuit Judges, and MADDEN, District Judge.

KALODNER, Circuit Judge.

This appeal is taken from the decision of the Tax Court.

Two questions are presented: (1) whether the taxpayer should be classified as a personal holding company within the meaning of Sections 501 and 502(f) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, §§ 501, 502(f); (2) whether, if the taxpayer is taxable as a personal holding company, there was a proper imposition of the penalty imposed by Section 291 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 291, for failure to file a personal holding company return.

The Tax Court upheld the Commissioner's determination that the taxpayer was a personal holding company and therefore liable for a personal holding company surtax in the sum of $24,854.51, together with a 25% penalty thereon in the sum of $6,213.63 for the fiscal year ended October 31, 1941.

The facts as found by the Tax Court may be summarized as follows:

Hatfried, Inc., hereinafter called the taxpayer, is a corporation organized under the laws of the State of Florida, and with principal offices in Miami Beach, Florida. It was organized to purchase property and erect buildings thereon. In 1940 it bought a lot at 18th Street and Collins Avenue, Miami Beach, Florida, and by the end of that year completed the construction of the Shelborne Hotel at a cost of $825,000. The taxpayer held title to the hotel free and clear of all mortgages. During all periods here involved Hattie Friedland was the sole owner of all the capital stock of the taxpayer.

On December 1, 1940, the taxpayer leased the hotel to Hattie Friedland for a term of three years at $85,000 a year. The lease provided that the hotel was to be used and occupied as a resort and commercial hotel. From the beginning of the lease until November, 1942, when the United States Army took over the hotel at an annual rental of $70,000, Hattie Friedland operated the hotel as a legitimate and bona fide business enterprise. The rental income from the Shelborne Hotel comprised the entire gross income of the taxpayer. It paid no dividends during the taxable year.

All tax returns for the taxpayer for the tax year were prepared and filed by I. H. Rosenberg of Rosenberg, Goldstein & Schultz, Philadelphia, Pennsylvania, certified public accountants. Rosenberg was advised of the facts and circumstances surrounding the leasing of the hotel. He never suggested the filing of a personal holding company surtax return and none was filed.

The taxpayer was legally dissolved on December 10, 1944 but continues as a corporate body for the purpose of prosecuting and defending suits by and against it and to enable it to liquidate its affairs. The individual petitioners are the taxpayer's directors and trustees in dissolution.

Finally the Tax Court found that there was no reasonable cause for the taxpayer's failure to file a personal holding company surtax return.

To the above outline of the facts as found by the Tax Court may be added the fact disclosed by the record in the proceedings before the Tax Court that Mr. Rosenberg, the accountant, prepared and filed the "Corporation Income and Declared Value Excess-Profits Tax Return" (Form 1120) for Hatfried, Inc., for the period in question and answered "No" to the following question constituting a part of said return: "7. Is the corporation a personal holding company within the meaning of Section 501 of the Internal Revenue Code? * * * (If so, an additional return on Form 1120H must be filed.)".

He answered "Yes" to the following question of said form: "9(b). Did any corporation, individual, partnership, trust, or association own at any time, during the taxable year 50 per cent or more of your voting stock? (If either answer is 'yes', attach separate schedule showing: (1) name and address; (2) percentage of stock owned; (3) date stock was acquired; and (4) the collector's office in which the income tax return of such corporation, individual, partnership, trust or association for the last taxable year was filed)." and submitted a schedule indicating that Hattie Friedland was the owner of 100 per cent of the outstanding stock of Hatfried, Inc.

On the facts as stated the Tax Court held that the taxpayer is a personal holding company under the statute and that its income for the tax year in the form of rent paid by the taxpayer's sole stockholder, is personal holding company income within the meaning of Section 502(f).

In doing so it ruled that the situation disclosed "exact compliance with the specifications of subsection (f)", namely, that compensation received by a taxpayer for the use of its property by a stockholder who owns 25% or more in value of the corporation's stock is personal holding company income.

The Tax Court further held that the "exact compliance" with subsection (f) eliminates consideration of subsection (g) since the latter provides that it " * * * does not include amounts constituting personal holding company income under subsection (f)".

The taxpayer concedes taxability under a strict or literal construction of subsection (f). It urges, however, that the legislative history of subsections (f) and (g) evidences the Congressional intent to limit applicabili-

ty of subsection (f) to instances of "non-business use of non-business property" and that only rents received on the leasing of "luxury" properties such as "yachts, country homes, city residences and similar luxury establishments intended for the personal use of the stockholder" constitute personal holding company income.

▮▮▮ The taxpayer further contends that it is a bona fide real estate company and that Congress intended that such companies whose main source of income constitutes rent received from the ownership of office buildings, apartment houses, etc., should continue to be free under subsection (g) to maintain their operations without being subjected to the personal holding company surtax provisions.

We cannot subscribe to the taxpayer's view. We find ourselves in complete accord with the Tax Court's ruling that "Nothing in the legislative history of either subsection persuades us that the provisions were intended to eliminate real estate holding companies which do not operate properties and fall squarely within the statutory language."

Additionally it may be pointed out that the taxpayer is seeking a judicial "construction" of a statute which would be tantamount to its re-writing by inserting a criterion which Congress did not see fit to insert. We refer to taxpayer's contention that the scope of subsection (f) should be judicially limited to instances of "non-business use of non-business property."

▮▮▮ It is well-settled that "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345. As we pointed out in Girard Inv. Co. v. Commissioner, 3 Cir., 122 F.2d 843, 845, 846, words may be interpolated in a statute "* * * only when the statutory language is equivocal or where literal interpretation leads to absurdity 'so gross as to shock the general moral or common sense'". See Fides v. Commissioner, 4 Cir., 137 F.2d 731. In its most recent ruling on the subject of statutory construction, the

Supreme Court in Crane v. Commissioner, 67 S.Ct. 1047, 1051, stated: "In the first place, the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses. * * * Strong countervailing considerations would be required to support a contention that Congress, in using the word 'property', meant 'equity', or that we should impute to it the intent to convey that meaning."

In Caminetti v. United States, 242 U,S, 470, 37 S.Ct. 192, 196, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas. 1917B, 1168, the Supreme Court held that language "* * * must be taken as the final expression of legislative intent and * * * (is) not to be added to or subtracted from by considerations drawn from titles or designating names or reports accompanying their introduction, or from any extraneous source."

▮▮ As to the question whether there was a proper imposition of the penalty under Section 291 of the Internal Revenue Code, that Section provides for a maximum 25% penalty for failure to file a personal holding company return on Form 1120H "* * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect. * * *." It is well-settled that the burden of establishing "reasonable cause" is on the taxpayer, Girard Inv. Co. v. Commissioner, supra, and that what constitutes "reasonable cause" is a question of fact in the first instance for the Tax Court's determination. Commissioner v. Lane-Wells Co., 321 U.S. 219, 225, 64 S. Ct. 511, 88 L.Ed. 684; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

▮ However, there must still be a "* * * substantial basis in the evidence * * *" for the facts as found by the Tax Court and if that is lacking "the appellate court may then indulge in making its own inferences and conclusions or it may remand * * *". Commissioner v. Scottish American Investment Co., Ltd., 323 U. S. 119, 124 65 S.Ct. 169, 171, 89 L.Ed. 113. While we are aware of the injunction in the case cited that "* * * the judicial eye must not *' * * rove * * *", we are of the opinion that in this case the find-

ing of the Tax Court is without "any substantial basis".

▮▮▮ We approach the problem, whether there was any substantial basis for the Tax Court's finding, with these principles in mind: (1) "Reasonable cause means nothing more than the exercise of ordinary business care and prudence".[1] and (2) the penalties imposed under the revenue laws were designed to attach to conduct of a taxpayer "which is intentional, or knowing, or voluntary, as distinguished from accidental"[2] as evidenced by the words in Section 291 "and not due to willful neglect."

▮▮▮ Certainly the mere failure to comply with the provisions of the revenue laws is not a per se "without reasonable cause" violation. That is manifest in the Lane-Wells Co. case, supra, where, although there was a failure to file a personal holding company return, the Supreme Court remanded to the Tax Court with directions to ascertain whether there was any reasonable cause.

▮▮▮ Coming now to the record in the instant case:

The taxpayer in its Form 1120 return made a full disclosure of all the facts operating to establish its status as a personal holding company. It disclosed that 100 per cent of its income was derived from the rental of its single property to a lessee stockholder who owned 100 per cent of its stock. Thus, there was no concealment or attempt to conceal any fact, material or otherwise, by the taxpayer. The tax return was prepared by a certified public accountant who was the taxpayer's regular accountant, who personally took care of the taxpayer's records and who was advised by the taxpayer of all the facts and circumstances.

It is inherent in the fact that the accountant prepared the return that he advised the taxpayer of the latter's tax liability. The conclusion is inescapable that when the taxpayer (acting through the accountant who prepared the return) answered "No" to the question in the return as to whether it was a personal holding company, it did so on the advice of the accountant.

The Treasury Department has long given sanction to the practice of taxpayers in enlisting the aid of accountants and attorneys in the preparation of their tax returns. Tax return forms, as did the one filed in this case, contain an "affidavit" for execution by the person or persons preparing the return. The language of the affidavit is significant to the issue here involved stating as it does that the person executing it " * * * prepared this return for the person named herein and that the return (including any accompanying schedules and statements) is a true, correct and complete statement of all the information respecting the tax liability of the person for whom this return has been prepared of which I/we have any knowledge."

Keeping in mind that the accountant who prepared the return was the regular accountant for the taxpayer, that he testified that he had been advised of the "facts and circumstances" and that "knowing these facts" he nevertheless did not suggest the filing of a personal holding company surtax return by the taxpayer, there can be only one possible conclusion: the statement in the return that the taxpayer was not a personal holding company was made on the accountant's advice and in reliance upon that advice.

In considering the question at issue it must also be kept in mind that originally Section 291 of the Revenue Act of 1934 made mandatory the imposition of a penalty where there was a failure to file a return. Congress amended Section 291 in 1936 so as to provide for imposition of the penalty in case of any failure to make and file a return " * * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect. * * *"

The Tax Court itself has construed the amendment to mean that the imposition of the penalty is no longer mandatory: Estate of Kirchner, 46 B.T.A. 578; cf. Paymer v. Commissioner, 2 Cir., 150 F.2d 334,

---

[1] Southeastern Finance Co. v. Commissioner, 5 Cir., 153 F.2d 205; Girard Inv. Co. v. Commissioner, supra, 122 F.2d at page 848.

[2] United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381.

337; see Merten's Law of Federal Income Taxation, Section 55.21 and footnote 63.

■ Further, it is well-settled that in the application of penalties "all questions in doubt must be resolved in favor of those from whom the penalty is sought." Crawford, Statutory Construction, Section 240, page 462.

Apropos to the instant case, it may be noted that in Three States Lumber Co. v. Commissioner, 5 T. C. 1391, the Tax Court found that there was "reasonable cause" where the taxpayer acting on the opinion of its tax advisors that the profits on certain of its operations constituted "capital gains", treated them as such in its return when in fact they were "ordinary income" subject to excess profits tax and failed to file the required excess profits tax return.

In the instant case the Tax Court premised imposition of the penalty upon its finding that the taxpayer's "meager evidence that the certified public accountant who prepared its tax return for the period in question was advised of the facts and circumstances relating to the lease, and did not suggest the filing of a personal holding company return, does not establish the reasonable cause sufficient to relieve it from the penalty." The Tax Court cited its decision in Tarbox Corporation, 6 T.C. 35, as the basis of its finding.

There is a sharp distinction between the instant case and the Tarbox case. In the latter the Tax Court pointed out that "Petitioner's return on Form 1120 is clearly inadequate for purpose of the required personal holding company return", and also that the tax advisor had not been supplied sufficient information by the taxpayer.

Thus, in the Tarbox case not only was there a failure of disclosure by the taxpayer to the tax advisor but the Form 1120 return far from revealing the truth contained instead the erroneous statement that no individual stockholder owned more than 50% of the stock of the taxpayer. Had here been a disclosure of the fact that a single stockholder owned 100% of the stock the return would have revealed the taxpayer to be a personal holding company.

In the case under review, however, even disregarding the corroborating testimony of the president of the taxpayer corporation and its accountant, the Form 1120 return itself, as already pointed out, clearly and unmistakably evidenced two things: (1) disclosure of all the facts by the taxpayer to the accountant who prepared the return and (2) disclosure by the accountant to the government of all those facts. And as already stated, the disclosure on the face of the Form 1120 operated to establish the status of the taxpayer as a personal holding company.

Finally, the Government makes the broad contention that ignorance of the law is no excuse, whether the ignorance is on the part of the taxpayer or his advisor. Thus, it argues that even assuming that the taxpayer relied on its accountant's advice (given by the accountant in ignorance of the law), no case of "reasonable cause" is established. In support of its position the Government relies on Fides v. Commissioner, supra. Granting that this case goes that far, the Tax Court itself has not subscribed to the principle. In Three States Lumber Co. v. Commissioner, supra, the Tax Court found there was "reasonable cause" where the taxpayer relied on its tax advisor's erroneous opinion as to the law. The Fides case was decided August 16, 1943, and the Three States Lumber Co. case was decided October 11, 1945.

Again, the Tax Court in C. R. Lindback Foundation v. Commissioner, January 31, 1945 4 T. C. 652, affirmed by this Court 3 Cir., 150 F.2d 986, held that "reasonable cause" was established where the taxpayer relied on advice of counsel. The Lindback case was cited with approval in Tarbox Corporation v. Commissioner, supra (January 11, 1946), as was Girard Inv. Co. v. Commissioner, supra, in which we held that reliance by the taxpayer upon the advice of an attorney or an accountant constituted "reasonable cause" for failure to file a return where there was full disclosure of the facts.

Both the Lindback and the Tarbox cases cited with approval Dayton Bronze Bearing Co. v. Gilligan, 6 Cir., 281 F. 709. The Dayton case held that reliance by a taxpayer upon the advice of counsel constituted "reasonable cause" even though the advice was founded upon mistake or ignorance of

the law. Said the Court, 281 F. at page 714: "* * * Courts are reluctant to construe a statute so as to impose a penalty, unless there has been a substantial delinquency. * * *"

To the same effect is Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418. While the case dealt with a criminal action under the revenue laws the Court in discussing Section 291 of the Revenue Code made this statement, 317 U.S. at page 496, 63 S.Ct. at page 367, 87 L.Ed. 418: "It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care. Such errors are corrected by the assessment of the deficiency of tax and its collection with interest for the delay. * * *"

Previously we pointed out that the Treasury Department has long given sanction to the practice of taxpayers in enlisting the aid of accountants in the preparation of their tax returns. To this may be added that the Treasury Department regularly admits accountants to practice before it in representation of taxpayers and the Tax Court does the same.

To accord the status of "experts" on the tax laws to accountants for representation purposes and then to hold that taxpayers who entrust to them the task of preparing their tax returns run the risk of paying heavy penalties should they err in the discharge of their assignment creates an absurd situation.

It is uncontroverted in this case that the Tax Court found that the evidence (despite its description of it as "meager") disclosed that the certified public accountant who prepared the return "was advised of the facts and circumstances * * * and did *not* suggest the filing of a personal holding company return * * *." (Emphasis supplied) In making this finding the Tax Court concluded that such evidence, however, "does *not* establish the reasonable cause sufficient to relieve it (the taxpayer) from the penalty."

That ruling is in line with the Tax Court's recent holding in the case of Orient Investment & Finance Company, Inc., v. Commissioner, 8 T.C. ——.

In that case, too, there was a failure to file a personal holding corporation surtax return. The Tax Court specifically found that one Burman who was president of the corporations involved (and who, together with his wife and daughter owned all of the stock), was "a man of little education * * he could not understand the requirements of the tax statutes and so left those matters entirely in the hands of the accountants * * * the accountants whom he engaged were reputable, licensed accountants and he had complete confidence in them * * * he believed that they had filed all of the returns and done all the things required under the law * * * the accountants had before them at all times all of the records of both companies as to stock ownership, as well as the source of their income * * * no information concerning any of those matters was ever withheld from them by Burman, or any other officer or stockholder." Additionally it was found by the Tax Court that "the accountants made all of the entries in petitioners' books and prepared their tax returns."

Discussing these findings and the defense of the taxpayer that Burman "* * * himself did not know the requirements of the law for the filing of personal holding company returns and that he, in good faith, entrusted those matters to the accountants whom he engaged for that purpose * *", the Tax Court found that, while Burman acted "in good faith" and there was "no willful neglect here in the sense of an 'intentional or designed' failure to file on the part of petitioners or their officers", there was a failure on the part of the taxpayers' accountants to acquaint themselves with "the petitioners' responsibility under the law" and that that constituted such a failure of "reasonable cause" on the part of the accountants as taxpayers' fiscal agents as to call for the imposition of a penalty.

By its ruling in the case just discussed it is evident that the Tax Court is mistaken as to the legal content of the words "reasonable cause" as used in Section 291 and that such mistaken view was applied in the instant case.

In the Orient Investment cases the Tax Court regarded the accountants as the "fiscal agents" of the taxpayers and treating

them as such held the principals liable for the conduct of the agents.

That conception does violence to the plain intent of Congress as expressed in Section 291. The latter provides for imposition of the penalty " * * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect."

The Courts, as above stated, have ruled that "reasonable cause means nothing more than the exercise of ordinary business care and prudence" and "willful" as "intentional, or knowing or voluntary".

To hold that a taxpayer who selects as his agent a certified public accountant (to whom as a class the Treasury Department and the Tax Court itself accord recognition as "experts" and as "counsel") has failed to exercise "ordinary business care and prudence" and becomes liable for the error of his advisor as "agent" is an inconceivable proposition.

It is evident from the foregoing that (1) the finding that there was no "reasonable cause" was without "substantial basis"; and (2) the Tax Court erred as a matter of law in the interpretation of the legal content of the words "reasonable cause" and "willful neglect" as used in Section 291.

██ Whether, in a given situation, the elements which constitute "Reasonable cause" or "willful neglect" are *present* is a question of fact; what elements *must* be present to constitute "reasonable cause" or "willful neglect" is a question of law. It is sun clear that in making its determination as to whether on the facts there was "reasonable cause", the Tax Court must apply the legal standard or measure contained in that term. For example: whether the elements which constitute "murder in the first degree" are present is a question of fact; what elements must be present to constitute "murder in the first degree" is a question of law.

██ The irrefragable conclusion[3] from the record is that the taxpayer here, in fact and in law, exercised such ordinary business care and prudence as to bring him within the rule that "reasonable cause means nothing more than the exercise of ordinary business care and prudence", and that there was no "willful neglect".

For the reasons stated the decision of the Tax Court, as amended, is affirmed as to the personal holding company surtax deficiency and reversed as to the 25 per cent delinquency penalty determination.

GOODRICH, Circuit Judge (dissenting in part).

The dissent in this case is upon a narrow point, but one which seems to the writer so important that the dissent should be recorded. There is full agreement in the majority's conclusion that the taxpayer is a personal holding company. There is also agreement with the proposition that the taxpayer who presents his facts to a lawyer or certified public accountant and relies on the advice given him by either one of these persons has proved that he has acted with reasonable cause and has negatived the charge of willful neglect. An analogy in the law of malicious prosecution at once suggests itself. There, the uniform holding is that one who presents his facts to an attorney at law and relies upon him in the initiation of the prosecution has established, as a matter of law, that he acted with reasonable and probable cause. An additional analogy is found where corporate directors rely upon a lawyer's advice as to the propriety of a dividend declaration. Stratton v. Anderson, 1936, 278 Mich. 499, 270 N.W. 764. With regard to tax matters, reliance upon the certified public accountant on the part of a lay taxpayer should be treated as an equivalent to the advice of a lawyer, since the Treasury has long recognized the propriety of the accountant's representation of the taxpayer with regard to tax matters.

But the Tax Court in the instant case did not make a finding that the taxpayer relied upon the accountant's advice. There are facts stated in the majority opinion which would lend support to such finding if the

---

3 " * * * If a substantial basis is lacking [for the Tax Court's finding and conclusion] the appellate court may then indulge in making its own inferences and conclusions or it may remand the case to the Tax Court for further appropriate proceedings. * * * " Commissioner v. Scottish American Investment Co., Ltd., 323 U.S. 119, 124, 65 S.Ct. 169, 89 L.Ed. 113.

Tax Court had made it. But that Court did not make a finding either way on the point. Doubtless because of the view it took of the matter, it considered such a finding irrelevant. The Supreme Court in Commissioner v. Lane-Wells Co., cited in the majority opinion, says in so many words that a finding that failure was due to reasonable cause and not due to wilful neglect is one of fact "in the first instance for the Board's determination". [321 U.S. 219, 64 S.Ct. 514.] Circuit Courts of Appeal are not to make such findings. Their duty is limited to an examination to see if a finding made by the Tax Court is supported by the evidence. Commissioner v. Scottish American Inv. Co., 1944, 323 U.S. 119,[1] 65 S.Ct. 169, 89 L.Ed. 113.

The proposition that a taxpayer's reliance upon an accountant's advice is reasonable cause is one of law and we may properly declare it, even though the Tax Court disagrees. But the question whether the taxpayer relied upon such advice is one of fact and we should not, ourselves, draw the inference. The case should, in my view, be remanded to the Tax Court for proceedings not inconsistent with the legal rule as declared by us.

[1] While the majority quotes language from the opinion in the case cited to the effect that the appellate court may make its own conclusions when substantial basis is lacking for those of the Tax Court, this statement assumes, it is urged, that the Tax Court has first made its finding. It has not done so in this case.