ESTATE OF ARCHIE ROSENBLATT, DECEASED, LENORA R. SCHNEIDER, ADMINISTRATRIX D.B.N.C.T.A., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent ESTATE OF HENRIETTA B. ROSENBLATT, DECEASED, PHYLLIS R. ROSENBLATT AND LENORA R. SCHNEIDER, EXECUTRICES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Rosenblatt v. Commissioner
Docket Nos. 981-73, 980-73
United States Tax Court
T.C. Memo 1977-12; 1977 Tax Ct. Memo LEXIS 429; 36 T.C.M. (CCH) 63; T.C.M. (RIA) 770012; January 18, 1977, Filed Sylman I. Euzent, for the petitioners. Robert E. Dallman, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency due in Federal estate tax from the estate of Archie Rosenblatt in the amount of $9,446.78. Respondent also determined a gift tax deficiency for the calendar quarter ending *430 December 1969, of $29,813.90 and an addition to tax under section 6651(a) [1] of $7,453.47 due from the estate of Henrietta B. Rosenblatt. The issues remaining for decision are: 1) Whether, for purposes of section 2033, Archie Rosenblatt had a 100 percent interest in the following properties [2] which were included in his estate by respondent: a) Southworth Promissory Note valued at $39,798.00 b) Berkshire Joint Venture interest at a value of $37,134.34 c) District Grocery Stores membership deposit account in the amount of $5,000.00 d) District Grocery Store patronage account in the amount of $7,019.11, and e) 231 shares of the Pepsi-Cola Bottling Company valued at $2,050.13. 2) Whether the failure of Henrietta Rosenblatt to file a gift tax return was due to reasonable cause, so that she is not liable for the failure to file penalty of section 6651(a). FINDINGS OF FACT In docket No. 981-73, petitioner is the estate of Archie Rosenblatt, who died *431 on August 21, 1968. Lenora R. Schneider, his daughter and administratrix D.B.N.C.T.A. of the estate, resided in Maryland at the time the petition was filed herein. In docket No. 980-73, petitioner is the estate of Henrietta B. Rosenblatt, who died in July 1971. Her daughters, Phyllis R. Rosenblatt, and Lenora R. Schneider, were executrices of her estate and both were Maryland residents at the time their petition was filed. Some of the facts have been stipulated in both docket numbers and are found accordingly. Archie and Henrietta Rosenblatt, husband and wife, had operated a grocery store since the 1920's. Both Mr. and Mrs. Rosenblatt devoted full time to the store, which was open six or seven days a week. Typically, Mr. Rosenblatt would rise at 5:00 each morning to purchase goods at the market for the store; Mrs. Rosenblatt would leave the house at about 9:45 and join her husband at the store. Mrs. Rosenblatt, in addition to tending to the day to day operations of the store, kept the books for the business, prepared the payroll and handled almost all the disbursements. Since the Rosenblatts left home early in the morning and did not generally return from the store *432 until about 9:30 each night, they employed a maid to take care of their two daughters. As the children became older, they also took part in the grocery store operation. The Rosenblatt store was a member of District Grocery Stores (DGS), an organization of independently owned small grocery stores. Assets of the estate included the District Grocery Stores Membership Deposit Account ($5,000) and the District Grocery Stores Patronage Account ($ 7,019.11). About 1934, a liquor license was obtained, solely in the name of Archie Rosenblatt. From 1934 until 1949, the liquor business was operated in the same small building as the grocery store. In 1949, the business was moved to a shopping center, whose buildings and underlying land were owned by Mr. and Mrs. Rosenblatt as joint tenants. The grocery store and liquor store were adjacent in the shopping center, and they were joined by a common doorway, so that customers could move from one store to the other without going outside. Mrs. Rosenblatt, as well as Mr. Rosenblatt, devoted time to the operation of both stores. The liquor business, with the accompanying personal property and liquor license was sold in 1967. The building *433 and the underlying land were retained by the Rosenblatts. As part of the transaction, Mr. Rosenblatt received a promissory note for $42,600 (Southworth Promissory Note). Although Mrs. Rosenblatt was not named as a payee on the note, other documents in the transaction reflect her participation. The Rosenblatts made a number of investments during their lifetimes, most of which were held jointly. One of the investments held in Mr. Rosenblatt's name only was a 1 percent limited partnership interest in the Berkshire Apartments located in Washington, D.C. (Berkshire interest). The suggestion for this purchase came from Mrs. Rosenblatt's sister and brother-in-law. The Rosenblatts jointly decided to purchase the Berkshire interest, but ownership was placed in the name of Mr. Rosenblatt only.
Sometime after 1949, Mr. Rosenblatt purchased some stock in the Pepsi-Cola Bottling Company without consultation with his wife. This investment was likewise carried solely in the name of Mr. Rosenblatt. [3]
*434 Shortly after Mr. Rosenblatt died in August 1968, Mrs. Rosenblatt's attorney suggested that she renounce the one-half interest in various properties that she received a surviving joint tenant. Mrs. Rosenblatt initially hesitated to execute the renunciation because she was concerned that she might not have enough funds to adequately support herself. In January 1969, when she was satisfied that her financial situation was secure, she signed the renunciation. The effect of the renunciation was to make a taxable gift. Mrs. Rosenblatt never fully understood the transaction, but ultimately came to regard it as part of the redistribution of her husband's estate. She did not realize the gift tax consequences of the renunciation. Mrs. Rosenblatt had discussed the renunciation with her accountant but he could not enlighten her further on what the consequences of renunciation would be. Mrs. Rosenblatt's attorney was experienced in tax matters, and realized that a taxable gift had been made, but did not tell Mrs. Rosenblatt. It was only when she received a letter from respondent that a deficiency penalty was being assessed for failure to file, that Mrs. Rosenblatt was informed a gift *435 tax return was due. OPINION The first issue to be decided is whether, under section 2033, certain properties in which Archie Rosenblatt had an interest at the time of his death, should be fully included in his estate. Respondent maintains that Mr. Rosenblatt owned 100 percent of the following property: a one-percent interest in a limited partnership, 231 shares of stock in Pepsi-Cola Company, a promissory note, the District Grocery Stores Membership Deposit, and the District Grocery Store Patronage Account. Petitioners contend that, although the disputed properties were in Mr. Rosenblatt's name, Mrs. Rosenblatt had a 50 percent interest in these properties so that only 50 percent should be included in the estate of Mr. Rosenblatt. Section 2033 provides that "[the] value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." In determining what interest a decedent had in particular property at the time of his death, we look to state law. See Morgan v. Commissioner,309 U.S. 78 (1940); Pierpont v. Commissioner,336 F.2d 277 (4th Cir. 1964), cert. denied *436 380 U.S. 908 (1965). Cf. Commissioner v. Estate of Bosch,387 U.S. 456 (1967). Petitioners argue that under Maryland law a resulting trust arose in favor of Mrs. Rosenblatt as to 50 percent of the properties in question. Unlike an express trust in which the settlor manifests an intention to create the trust, [a] resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property. In other words, an express trust is created if it appears that there was an affirmative intention to create it; whereas in the case of a resulting trust the circumstances indicate the absence of an intention to give the beneficial interest to the person in whom the legal title to the property is vested. [Fn. ref. omitted.] [5 Scott, Trusts 3213 (3d ed. 1967).] Thus, for example, where the purchase price for property is paid by one person, and legal title is taken in the name of another, the holder of legal title may be presumed to hold the property as trustee for the purchaser. *437 Fitch v. Double "U" Sales Corp.,212 Md. 324, 129 A. 2d 93, 96 (1957); Mountford v. Mountford,181 Md. 212, 29 A. 2d 258, 262 (1942); Dixon v. Dixon,123 Md. 44, 90 A. 846, 850 (1914). According to petitioners' theory, Mr. Rosenblatt, in purchasing the disputed properties, applied a portion of Mrs. Rosenblatt's funds toward the purchase price. Mr. Rosenblatt then held his wife's portion of the purchased property (which petitioner has assumed to be 50 percent) as trustee for her. Petitioners, however, have failed to prove the underlying assumption of the resulting trust theory, namely, that Mrs. Rosenblatt's property was used to purchase the assets purportedly held in trust. Compare Battle v. Allen,250 Md. 672, 245 A. 2d 590 (1968) with Ensor v. Ensor,270 Md. 549, 312 A. 2d 286 (1973). In other words, petitioners did not establish the fact that Mrs. Rosenblatt had property beyond her already substantial interest in the Rosenblatts' joint property, and that the assets in question were purchased from these resources. Even if such facts were established there is nothing in the record indicating *438 that record title to these assets does not accord with the wishes of the Rosenblatts.
Petitioners argue that the assets of the Rosenblatt family were acquired through joint effort, and these assets belonged to Mr. and Mrs. Rosenblatt equally, regardless of who held title to any individual asset. Petitioners have the burden of proof with respect to this contention. Rule 142, Tax Court Rules of Practice and Procedure.
While it is clear from the record that Mrs. Rosenblatt played an active role in the conduct of the business, there is no proof that she was entitled to an equal one-half interest in all of the property both Rosenblatts accumulated during their marriage. The assets held in Mr. Rosenblatt's name may, for example, be attributable in part ot the initial capital interest received from Mr. Rosenblatt's father. Furthermore, we note that the Rosenblatts could have held the disputed properties jointly if they so desired. In fact, the final accounting of Mr. Rosenblatt's estate shows that most of his assets were held jointly with Mrs. Rosenblatt. We ordinarily assume that people can and will establish property rights inter se when they have the opportunity to do so, *439 and have previously demonstrated their willingness to do so. In this case, the Rosenblatts held certain items jointly and others in the name of Mr. Rosenblatt. Since the Rosenblatts arranged their property in this manner, petitioners carry a heavy burden in proving that the property rights of the Rosenblatts were contrary to this arrangement. Petitioners have failed to carry this burden. We cannot treat lightly the formal manner in which properties are held, lest we subject legal titles to unnecessary uncertainties and complicate the administration of law. Focusing on the individual assets involved, we note that there was virtually no evidence presented with respect to the DGS accounts or the 231 shares of stock in Pepsi-Cola, and therefore, no basis on which we could sustain petitioners' position. Petitioners did present some testimony with respect to the ownership of the one percent limited partnership interest. Lenora Schneider, the Rosenblatts' daughter, testified that the purchase which took place in the middle to late 1940's was a joint decision on the part of her parents. Her testimony, however, did not shed any light on the critical question of whether Mrs. Rosenblatt's *440 assets were used in the purchase of this limited partnership interest. Therefore, respondent's determination with respect to this asset must also be sustained. Finally, we turn to Mrs. Rosenblatt's interest in the promissory note from the sale of the liquor store. The note was made out solely to Mr. Rosenblatt. Again, petitioners have failed to show that Mrs. Rosenblatt had a legal right to one-half of the proceeds of sale. Moreover, if the Rosenblatts had desired it, there appears to be no reason why Mr. and Mrs. Rosenblatt could not have been joint payees on the note. Under these circumstances, we must again find for the respondent. At bottom, petitioners assume that since the Rosenblatts ran a typical "Mom and Pop" business all resources used to purchase the assets in question were derived from the business, and were owned coequally. Therefore, the argument runs, if any assets were acquired individually by one spouse rather than jointly, the acquiring spouse owns half of the assets subject to a resulting trust in favor of the other spouse. Thus petitioner states on brief: Respondent correctly notes that no testimony was given as to the District Grocery Stores Membership *441 Deposit and Patronage accounts with respect to what they were and when they came into existence, etc. Respondent concludes incorrectly as to Mrs. Rosenblatt's contribution to these accounts, however, for it is crystal clear from the record that any and all earnings and assets of the Rosenblatts were earned by them jointly. * * * We are simply unable to make this leap of logic. [4]
The remaining issue is whether the estate of Henrietta Rosenblatt is liable for the penalty under section 6651(a)(1). [5] Section 6651(a)(1) provides for an addition to tax of up to 25 percent of the tax due for failure to file a timely return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." *442 Whether the failure to file on time was due to "reasonable cause" is primarily a question of fact to be determined from all the surrounding circumstances in a particular case. Estate of Frank Duttenhofer,49 T.C. 200, 204 (1967), affirmed per curiam 410 F. 2d 302 (6th Cir. 1969). It has generally been held that "reasonable cause" may be demonstrated by good faith reliance on a tax advisor to prepare and file the necessary tax returns. Orient Investment & Finance Co. v. Commissioner,166 F. 2d 601 (C.A. D.C. 1948), revg. and remanding a Memorandum Opinion of this Court; Haywood Lumber & Min. Co. v. Commissioner,178 F. 2d 769 (2d Cir. 1950), modifying 12 T.C. 735 (1949); Hatfried, Inc. v. Commissioner,162 F. 2d 628 (3d Cir. 1947), affg. in part and revg. in part a Memorandum Opinion of this Court; Brooklyn & Richmond Ferry Co.,9 T.C. 865 (1947), affd. 171 F. 2d 616 (2d Cir. 1948), cert. denied 336 U.S. 968 (1949); Safety Tube Corp.,8 T.C. 757 (1947), affd. 168 F. 2d 787 (6th Cir. 1948); Giesen v. United States,369 F. Supp. 33 (W.D. Wis. 1973). *443 In the instant case, there is little doubt that Mrs. Rosenblatt placed a great deal of reliance on her attorney to settle the details of her husband's estate. In conjunction with this settlement, her attorney advised her to renounce her one-half interest in the properties that she received as surviving joint tenant. Mrs. Rosenblatt carefully considered the practical effects of the renunciation, but was unaware of any gift tax implications. The renunciation, which was presumably suggested as a means of saving estate taxes, is a fairly sophisticated legal transaction. As a layperson, Mrs. Rosenblatt could not reasonably be expected to realize that it might give rise to a gift tax. While Mrs. Rosenblatt was unfamiliar with the tax law, she did exercise ordinary prudence by engaging an attorney who was experienced in taxation, and one in whom she felt she could place her trust. Under these circumstances, we believe that Mrs. Rosenblatt had "reasonable cause" not to file the gift tax return and that the penalty under section 6651(a)(1) is inappropriate. [6]
*444 The instant case is unlike those cases where, for example, the taxpayer is aware that a return is due, but delegates that responsibility to a third person. See e.g. Logan Lumber Co. v. Commissioner,365 F.2d 846 (5th Cir. 1966), affg. a Memorandum Opinion of this Court; Estate of William T. Mayer,43 T.C. 403 (1964), affd. per curiam 351 F.2d 617 (2d Cir. 1965), cert. denied 383 U.S. 935 (1966); Inter-American Life Insurance Co.,56 T.C. 497 (1971), affd. per curiam 469 F. 2d 697 (9th Cir. 1972). This Court has emphasized the distinction between those taxpayers who have knowledge that a return should be filed, and those without such knowledge. In Estate of Frank Duttenhofer,supra, at 206, we noted the following in sustaining the penalty: As in the prior cases mentioned above, where the taxpayers, without knowledge that a return was required, relied upon a competent tax adviser to prepare the proper papers, this good-faith reliance constituted reasonable cause under section 6651. However, it is our opinion that the reasoning of those cases does not apply where a *445 third person is relied upon to prepare and timely file a tax return for a taxpayer who knows that a return must be filed. On brief, respondent concedes that "if the donor had received actual advice from the tax attorney that this was not a gift and that a gift tax return was accordingly not due, she would have had reasonable cause." Respondent argues, however, that Mrs. Rosenblatt did not rely on any affirmative advice from her attorney telling her that she need not file the gift tax return.
Reasonable cause must be determined with a focus on the taxpayer. At least in the instant case, whether the advisor's act was one of commission or omission had little effect on the issue of reasonable cause. Mrs. Rosenblatt was unfamiliar with the tax law. She relied on the advice of her attorney regarding the disposition of her husband's estate, and depended on him to prepare whatever papers were necessary in this connection. [7] Given the sophisticated nature of the renunciation, Mrs. Rosenblatt could not, without further knowledge, be expected to know that a gift tax return was due. She needed and had the right to expect the advice of her attorney on this matter, and reasonable cause *446 for failure to file was no less present than if she had been told directly by her attorney that no return was due. Decisions will be entered under Rule 155.* Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The value of these assets is reflected as of the alternate valuation date. See section 2032.↩
3. In the FIRST AND FINAL ACCOUNT of Mr. Rosenblatt's estate, the District Grocery Stores Membership Account, the District Grocery Stores Patronage Account, the Limited Partnership and the Pepsi-Cola stock were listed as being owned entirely by the decedent. This document was subscribed and sworn to on September 23, 1970, and was accepted by the Orphans Court, Prince George's County on the same date. In the AMENDED FIRST AND FINAL ACCOUNT, these disputed items were listed as being owned equally by the decedent and his wife. This document was subscribed and sworn to on February 29, 1972, and accepted by the Court on March 13, 1974.↩
4. Indeed, petitioners have also experienced uncomfortable difficulty in making the leap. At a loss to explain how the theory permitted Mr. Rosenblatt to admittedly own certain assets not here in issue (insurance policies, personal effects, a car, real estate) individually rather than jointly, petitioners on reply brief request that the pleadings be deemed amended to claim these items (other than the real estate) as joint property also.↩
5. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;↩
6. While reasonable cause must be shown even in the absence of willful neglect, Paula Construction Co.58 T.C. 1055, 1061 (1972), affd. without published opinion 474 F. 2d 1345 (5th Cir. 1973); Beck Chemical Equipment Corporation,27 T.C. 840, 858 (1957), the willful neglect language suggests at least a knowing omission, certainly not the kind of omission present here. See United States v. Murdock,290 U.S. 389 (1933); and Hatfried, Inc. v. Commissioner,162 F. 2d 628↩ (3d Cir. 1947), affg. in part and revg. in part a Memorandum Opinion of this Court.
7. Indeed, respondent concedes that the attorney was aware the renunciation was a gift, and that he did not make it known to Mrs. Rosenblatt that a gift tax return was due.↩