**LOUIS PIZITZ DRY GOODS CO., Inc.**

v.

**DEAL et al.**

**No. 14621.**

United States Court of Appeals
Fifth Circuit.

Dec. 29, 1953.

Rehearing Denied Feb. 3, 1954.

William S. Pritchard and Winston B. McCall, Birmingham, Ala., Pritchard, McCall & Jones, Birmingham, Ala., of counsel, for appellant.

Robert B. Ross, Sp. Asst. to Atty. Gen., Dept. of Justice, Ellis N. Slack, Sp. Asst. Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Washington, D. C., John D. Hill, U. S. Atty., Birmingham, Ala., Carolyn R. Just, Sp. Asst. to Atty. Gen., Washington, D. C., Frank M. Johnson, Jr., U. S. Atty., Birmingham, Ala., for appellees.

Before HOLMES and RIVES, Circuit Judges, and KENNAMER, District Judge.

RIVES, Circuit Judge.

This appeal involves income and excess profits taxes in the amount of $122,135.-45 plus interest, for the taxable years ended January 31, 1942 through January 31, 1947, inclusive. The sole issue relates to the timeliness of the election filed by the taxpayer to have applied the involuntary liquidation and replacement provisions of Section 22(d) (6), Internal Revenue Code, 26 U.S.C.A. § 22(d) (6), for each of the taxable years. Such election, along with amended returns for these years, was filed on September 18, 1948.

The Revenue Act of 1942, c. 619, 56 Stat. 798, Sec. 119, 26 U.S.C.A. Int.Rev. Acts, page 182, effective October 21, 1942, for the first time extended to taxpayers generally, who inventoried their goods under the "last-in, first-out", or "Lifo" method, the privilege of electing to report a portion of their inventory under the involuntary liquidation provisions of Section 22(d) (6) of the Code. The part of that Act prescribing the time for the taxpayer's election as "at the time of the filing of the taxpayer's income tax return for such year" reads as follows:

"Sec. 119. LAST-IN FIRST-OUT INVENTORY.

"Section 22(d) (relating to the use of the elective inventory method) is amended by adding at the end thereof the following new paragraph:

" '(6) Involuntary liquidation and replacement of inventory.—

" '(A) Adjustment of Net Income and Resulting Tax.—If, for any taxable year beginning after December 31, 1941, and prior to the termination of the present war as proclaimed by the President, the closing inventory of a taxpayer inventorying goods under the method provided in this subsection reflects a decrease from the opening inventory of such goods for such year, and if, *at the time of the filing of the taxpayer's income tax return for such year,* the taxpayer elects to have the provisions of this paragraph apply and so notifies the Commissioner, and if, at the time of such election, it is established to the satisfaction of the Commissioner, in accordance with such regulations as the Commissioner may prescribe with the approval of the Secretary, that such decrease is attributable to the involuntary liquidation of such inventory as defined in subparagraph (B), and if the closing inventory of a subsequent taxable year, ending not more than three years after the termination of the present war as proclaimed by the President, reflects a replacement, in whole or in part, of the goods so previously liquidated, the net income of the taxpayer otherwise de-

termined for the year of such involuntary liquidation shall be adjusted as follows: * * *." (Emphasis supplied.)

This requirement was continued in the amendment in Section 110 of the Revenue Act of 1943, c. 63, 58 Stat. 21, 26 U. S.C.A. Int.Rev. Acts, page 438, approved February 25, 1944, but retroactive and applicable with respect to taxable years beginning after December 31, 1940. Since that amendment stepped back for one year, the calendar year 1941, the period covered by the involuntary liquidation and replacement provisions, it did provide that, with respect to taxable years beginning in 1941, the election might be filed "at any time within the six months period following the date of the enactment of Revenue Act of 1943", that is prior to August 26, 1944. On the face of the statutes then in effect, it would seem clear that the taxpayer's election filed on September 18, 1948 came too late.

What constitutes timely election by the taxpayer may be influenced by the effect of such election accompanied by the applicable conditions of involuntary liquidation of the inventory as defined in the statute, and replacement, in whole or in part, of the goods so previously liquidated, as reflected by the closing inventory of a subsequent taxable year within the designated period. In such event, the statute provides that,

> "the net income of the taxpayer otherwise determined for the year of such involuntary liquidation shall be adjusted as follows:

> "(i) Increased by an amount equal to the excess, if any, of the aggregate cost of such goods reflected in the opening inventory of the year of involuntary liquidation over the aggregate replacement cost; or

> "(ii) Decreased by an amount equal to the excess, if any, of the aggregate replacement cost of such goods over the aggregate cost thereof reflected in the opening inventory

of the year of the involuntary liquidation."

■■ It is apparent that whether the application of Section 22(d) (6) would result in a tax benefit or a tax disadvantage depends upon future market conditions, that is upon whether the replacement cost is greater or less than the cost of the goods liquidated. To permit the taxpayer to make his election after the time specified in the statute, and after the increased cost of replacements had made it clear that he would thereby have a tax advantage, would be to give the taxpayer the benefit of hindsight denied to other taxpayers who made their elections at the time of filing their income tax returns, as required by the statute. A construction of the statute effectuating such an unfair result should ordinarily be avoided. See Riley Inv. Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36. The taxpayer carries a heavy burden to show the timeliness of his election of September 18, 1948, over five years after the date on which the return was due for the earliest taxable year, and over one year after the date on which the return was due for the last of the six years here involved.

To meet this burden taxpayer urges several points. First, it says that the delay was occasioned by the Commissioner's erroneous construction of the statute, and Commissioner's failure promptly to issue regulations which would permit taxpayer to know the benefits to it of making such election. Taxpayers who might elect to have applied the involuntary liquidation and replacement provisions of Section 22(d) (6) were those who inventoried their goods under the method provided in the previous parts of subsection 22(d), that is under the "last-in, first-out" or "Lifo" method. Taxpayer included in its income tax return for the year ended January 31, 1942, a statement of election to use the "Lifo" method of computing inventories, and used that method in the returns filed for each of the taxable years.

In January, 1946, the Commissioner determined that the taxpayer's use of "Lifo" did not clearly reflect income, and proposed a deficiency against the taxpayer for each year involved. However, after a protest by taxpayer and a field conference, taxpayer was permitted to use "Lifo".

Until after the decision in Hutzler Brothers Co. v. Commissioner, 8 T.C. 14, the Commissioner had issued no regulations with respect to the computation under the "Lifo" method by a taxpayer using the retail inventory method. In 1948 such regulations were issued. On March 9, 1948, the Commissioner issued Mim. 6244, 1948–1 Cum.Bull. 21, which stated in part:

> "Retailers who have filed, on the basis of the elective method, returns for past years which are still open, and who use indices that are not acceptable to the Commissioner, may file amended returns employing acceptable indices."

On September 18, 1948, taxpayer filed amended returns for the taxable years ended January 31, 1942, through January 31, 1947, and with these returns, for the first time, filed an election to have applied for each year involved the involuntary liquidation and replacement provisions of Section 22(d) (6), Internal Revenue Code.

The taxpayer actually made the election to use the "Lifo" method in 1942, and its position was definitely upheld in Hutzler Brothers Co. v. Commissioner, supra, which was decided in January, 1947. The Commissioner did not acquiesce in that decision until on March 4, 1948, he issued Treasury Decision 5605, 1948–1CB16 amending Treasury Department Regulations 103 and 111 "in order to adapt the retail inventory requirements of the regulations to the elective inventory principle of Section 22(d) of the Internal Revenue Code as enunciated by the Tax Court of the United States in Hutzler Brothers Co." During the interim, the taxpayer may well have been in a state of doubt and confusion as to whether it had a right to use the "Lifo" method of computing its inventories, and thus come within the class of taxpayers entitled to have applied the provisions of Section 22(d) (6) for involuntary liquidation and replacement of inventory. It seems to us, however, that, despite the Commissioner's contrary position, the taxpayer could just as well have invoked the involuntary liquidation provisions, as it did in fact elect to use the "Lifo" method. As we have previously indicated, the statute did not contemplate that a taxpayer electing to have applied the provisions for involuntary liquidation and replacement of inventory should know in advance with any degree of certainty whether such election would result in a tax benefit or a tax disadvantage.

As another point, the taxpayer relies strongly on a statute enacted after its election of September 18, 1948 had been filed, viz., Public Law 756, approved September 5, 1950, c. 851, 64 Stat. 593, 26 U.S.C.A. Int.Rev. Acts, page 100, not so much as granting to the taxpayer a new substantial right, but insisting that said statute should be applied to remedy claimed erroneous constructions and inactions by the Commissioner, which the taxpayer insists had denied it the rights originally intended by Congress. This 1950 Act provided in pertinent part:

> "Section 22(d) (6) (A) (relating to the involuntary liquidation and replacement of elective inventories) is hereby amended as follows: * * *
>
> "'(A) Adjustment of net income and resulting tax. If, for any taxable year beginning after December 31, 1940, and prior to January 1, 1948, the closing inventory of a taxpayer inventorying goods under the method provided in this subsection reflects a decrease from the opening inventory of such goods for such year, and if the taxpayer elects, *at such time and in such manner and subject to such regulations as the Commissioner with approval of the Secretary may prescribe,* to have the provisions of this para-

graph apply, and if it established to the satisfaction of the Commissioner, in accordance with such regulations, that such decrease is attributable to the involuntary liquidation of such inventory as defined in subparagraph (B), and if the closing inventory of a subsequent taxable year, ending prior to January 1, 1951, reflects a replacement, in whole or in part, of the goods so previously liquidated, the net income of the taxpayer otherwise determined for the year of such involuntary liquidation shall be adjusted as follows:'.

"(b) The amendments made by this section shall be applicable with respect to taxable years beginning after December 31, 1940." (Emphasis supplied.)

On May 22, 1951, the Commissioner issued Treasury Decision 5841 to conform the regulations to the 1950 Act. Under this amended regulation the election might be made "at any time not later than six months after the time of filing his income tax return for the year of the liquidation (or with respect to liquidations occurring in a taxable year beginning in 1941, at any time prior to August 26, 1944)." The taxpayer's election of September 18, 1948 was not filed within the time prescribed by this regulation.

The taxpayer insists, however, that the intendment of Congress in passing the 1950 Act was to grant relief to taxpayers in its situation, and that it was error for the Commissioner to adopt a regulation denying to the taxpayer the right of election authorized by the statute. The legislative history of the statute is contrary, we think, to the taxpayer's contention. It contains no reference to the Commissioner's erroneous position that the "Lifo" elective inventory method was not available to taxpayers whose inventory records are kept on the basis of the retail inventory method, a position finally abandoned in Treasury Decision 5605 approved March 4, 1948. Rather, it refers to hardship cases.[1] Nothing in the legislative history of the statute shows a Congressional purpose to require the reopening of years long closed.

Lastly, the taxpayer insists that in Treasury Department Regulations 118, printed October 7, 1953, the Commissioner has again changed position, and has recognized the right of the taxpayer to make the election "at any time not later than December 15, 1952, in the case of the year of liquidation being a taxable year ending before March 1, 1952." Section 39.22(d)–7, Treasury Regulations 118. That reference is inaptly worded, but we think it must be construed as "in the case of the year of

[1] "Present law provides that, in order to have the advantage of such a tax recomputation, the taxpayer must elect to have these provisions apply 'at the time of the filing of the taxpayer's income-tax return' for the year in which the inventory liquidation occurred. However, in some cases taxpayers did not know, at the time the return was filed, that it would be to their advantage to make such an election. For example, there are cases where, at the time of a subsequent investigation of the return, Government agents have segregated into two groups or classes an inventory which the taxpayer considered as consisting of only one class of items. As a result of this segregation it is now held that a liquidation of the inventory of one class of items occurred, although there was no decrease in the number of both classes combined. It is held that, not having made a timely election, the taxpayer cannot apply the excess cost of replacing these items in a subsequent year to reduce the tax for the year in which the liquidation occurred.

"This bill provides that the taxpayer can make the required election 'at such time and in such manner and subject to such regulations as the Commissioner with the approval of the Secretary may prescribe.' Since the amendment is retroactive to taxable years beginning after December 31, 1940, the Commissioner of Internal Revenue can provide relief in any case which appears to involve hardship." U.S.Code Congressional Service, 81st Cong., Vol. 2, p. 3577, quoting Senate Report No. 2366, Aug. 16, 1950 [To accompany H.R. 3278], House Report No. 2756, July 27, 1950 [To accompany H.R. 3278].

liquidation beginning after December 31, 1951, and ending before March 1, 1952", because in several places it is stated that Regulations 118 are "applicable only to years beginning after December 31, 1951", and in Section 39.1–1(b) the statement is specific that, "The regulations in this part are applicable only with respect to taxable years beginning after December 31, 1951."

The taxpayer's arguments, ingenious, resourceful, and forcefully urged, have all been carefully considered and found insufficient. The judgment is therefore

Affirmed.