claim and accrued on the date of rejection. John F. Jelke Co. v. Smietanka, supra.

The claim for refund was rejected by the Commissioner of Internal Revenue on July 27, 1951. Plaintiff's petition was filed July 24, 1953, within two years of the date of rejection.

Plaintiff having exercised its option to sue within two years after rejection of the claim by the Commissioner of Internal Revenue, any delay in the settlement of the claim up to this date was caused by the action of the Commissioner in not rejecting the claim at an earlier date. Under the statute the claim could have been rejected by giving taxpayer notice by registered mail on the same day in which the claim was filed.

In the light of the foregoing there is no merit to the contention of the defendant. The six-year statute of limitations does not apply, and defendant's motion for judgment on the pleadings is denied.

It is so ordered.

JONES, Chief Judge, and MADDEN WHITAKER and LITTLETON, Judges, concur.

HURON MILLING COMPANY
v.
The UNITED STATES.
No. 50451.

United States Court of Claims.
May 3, 1955.

Jay O. Kramer, New York City, for plaintiff.

H. S. Fessenden, Washington, D. C., with whom was H. Brian Holland, Asst. Atty. Gen., for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues to recover income and excess profits taxes in the amount of $112,638.90, collected from it for the fiscal year which ended June 30, 1946. It says that it should have been allowed a reduction in its income for that year because, during that year, it was compelled, by an order of the War Food Administration, to reduce its inventory of flour on hand, and was not allowed to rebuild its inventory until after that year had ended. When it did replenish its stock of flour, the flour cost it much more than the flour which was in its inventory at the beginning of the 1946 fiscal year had cost it.

The plaintiff bases its claim upon section 22(d) (6) (A) of the Internal Revenue Code, Title 26 U.S.C. That section provides that if, for any taxable year beginning after December 31, 1940, and prior to January 1, 1948, a taxpayer which has been using the "last in first out" or LIFO method of computing its inventory, has a closing inventory smaller than its opening one, because of an involuntary reduction in its stock of goods, it may elect, at such time and in such manner as the Commissioner of Internal Revenue may prescribe, to aban-

don the LIFO method. If it does so elect, and if it builds up its inventory in a subsequent taxable year, it may have its taxable income for the taxable year in which its inventory was depleted reduced by the amount by which the cost of the replacement exceeded the cost of the goods depleted, or increased by any reduction in such cost.

As section 22(d) (6) was at the time plaintiff filed its 1946 return, in September 1946, it required the taxpayer to make the election referred to above at the time the return for the year in which the inventory was depleted was filed. If he did so elect, and if prices in the subsequent year in which he replenished his inventory were lower, his tax for the year would be increased. The plaintiff, in fact, replenished its inventory during the months of July, August, and September 1946, before it filed its return for the fiscal year ending June 30, 1946, during which months prices were higher, and the price trend was upward, hence it would seem that it would have known that it would be to its advantage to make the election. Apparently, its tax advisor was not aware of the provisions of section 22(d) (6) (A). At any rate the plaintiff did not make the election when it filed its return. On June 1, 1948, the plaintiff filed its claim for refund on the ground of section 22(d) (6) (A). The Commissioner of Internal Revenue rejected the claim on December 8, 1949.

By the Act of September 5, 1950, c. 851, 64 Stat. 592, section 22(d) (6) was amended by eliminating the requirement of election at the time of filing the return and saying that the election should be

"at such time and in such manner and subject to such regulations as the Commissioner with the approval of the Secretary may prescribe, * * *."

The Commissioner by regulation, sec. 29.22 (d)–7 [as amended by T.D. 5841, 1951–1 Cum.Bull. 11], provided that the election had to be made within six

months from the date of the filing of the return. The 1950 amendment, as implemented by the regulation, of course gave no relief to the plaintiff. The six months' period had expired years before the statute and the regulation were promulgated.

■ The plaintiff urges that the regulation is invalid because it nullifies the intention of the statute. The plaintiff contends, in effect, that the regulation, in order to carry out the intent of the statute, should have allowed a taxpayer at least the time, after the filing of the return, that elapsed before the return was examined and investigated by the revenue agent. The plaintiff quotes language from the Ways and Means Committee Report on HR 3278, which embodied the 1950 amendment, giving, as an example of hardship, a case where the revenue agent had segregated an inventory which the taxpayer had regarded as a single inventory into two separate inventories, and found that one of them had been involuntarily liquidated, although, taking the two together, the inventory had not been depleted. The Committee said:

"Since the amendment is retroactive to taxable years beginning after December 31, 1940, the Commissioner of Internal Revenue can provide relief in any case which appears to involve hardship."

It may well be that the Commissioner's regulations should have been so drawn as to cover a hardship case such as that given by the Committee as an example. But that would not mean that the regulation was void as to the plaintiff and all other taxpayers for the whole 1940–1948 period who failed to make an election only because they were not aware of the statutory privilege. The regulation did extend the privilege to those who, either unaware of the statute or in doubt as to whether election would be to their advantage, learned of the statute or made up their minds as to its advantages within six months after filing their returns. It was not, therefore, a futile and useless regulation.

■ The plaintiff urges, not very vigorously, that the return which it did file constituted an informal election pursuant to section 22(d) (6) (A). One skilled in tax law might have concluded from looking at the return that the plaintiff was unaware of section 22(d) (6) (A). That is not an informal election pursuant to that section.

■ The plaintiff urges that, because it permitted its tax return to be prepared by an apparently competent tax advisor, it should have the involuntary liquidation privilege, although it did not elect to take it within the time stipulated in the regulation. The plaintiff cites cases, the leading one being Hatfried, Inc., v. Commissioner, 3 Cir., 162 F.2d 628, 632. That was a case where the Commissioner imposed the statutory 25 percent penalty for failing to file a personal holding company return, although the taxpayer had acted on the advice of a competent accountant. The statute provided for the imposition of the penalty " 'unless it is shown that such failure is due to reasonable cause and not due to willful neglect.' " 26 U.S.C.A. § 291. The court held that the penalty should not have been imposed.

In the instant case, the plaintiff was not subjected to a penalty. It was given the privilege of an election, which, if it had exercised it at the time of filing its return, as the statute then required, or if, as the regulation was later written, it had exercised it within six months after the filing of the return, would have given it a tax advantage. We think the refusal of the Commissioner to waive the requirements of the regulation is not at all the equivalent of the imposition of a penalty. If the plaintiff was entitled to the privilege on this showing, we think every such taxpayer from the year 1940 to the time when the tax statute expired in 1948 could have claimed it, after the 1950 amendment was enacted.

Our conclusion is that the plaintiff, because it did not make its election in com-

pliance with the statute in force at the time it filed its return nor in compliance with the 1950 amendment and the regulation issued under it, is not entitled to recover. In view of this conclusion, it is not necessary to decide the extremely intricate and troublesome question raised by the Government of whether the plaintiff's resort to the Tax Court deprived it of the right to sue in this court.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

WHITAKER, Judge (dissenting).

It seems to me that the regulation under the 1950 Act requiring the making of an election within six months after the return was filed nullifies that provision of the Act which makes it retroactive to taxable years beginning after December 31, 1940. A return for a taxable year beginning January 1, 1941, had to be filed by March or April 1942. If the election had to be made six months thereafter, it would have been necessary to make it by September or October 1942; but the Act of 1950 extending the time for making the election was not passed until eight years later. Hence, under the regulation the time for making the election had passed before the Act giving the right had been enacted. Its retroactivity to the year 1941 was, therefore, nullified by the regulation. So, as to the years 1942, 1943, 1944, 1945, 1946, 1947 and 1948, and parts of 1949.

The taxpayer was entitled to some period of time after the passage of the Act of 1950 to take advantage of the privilege therein granted. It claimed the privilege in 1948, when it filed its claim for refund.

I think plaintiff is entitled to recover.

LITTLETON, Judge, concurs in this dissent.

The STANDARD OIL COMPANY, an Ohio Corporation,

v.

The UNITED STATES.
No. 49152.

United States Court of Claims.
May 3, 1955.

