AEOLIAN COMPANY OF MISSOURI (#77272), a Corporation, and Interstate Supply Company, a Corporation, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15940.

United States Court of Appeals
Eighth Circuit.

July 8, 1958.

William H. Charles, St. Louis, Mo. (Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel), for appellants.

Harry Marselli, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Thomas N. Chambers, Attys., Dept. of Justice, Washington, D. C., Harry Richards, U. S. Atty. and Robert E. Brauer, Asst. U. S. Atty., St. Louis, Mo., were with him on the brief), for appellee.

Before SANBORN, VOGEL and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The question for determination is whether or not appellants filed timely claims for refund and made timely election under Section 22(d) (6) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(d) (6) (A). Appellants are transferees and owners of all assets, including claims for refund here involved, of Aeolian Company of Missouri (#40307), a corporation, hereinafter called taxpayer, which dissolved in 1951. In this action appellants seek to recover refund of income taxes, declared value excess profits taxes and excess profit taxes, aggregating $76,183.59, assessed against and paid by taxpayer for the fiscal years ended June 30, 1942, to June 30, 1946, inclusive. From the judgment of the trial court, rendered on agreed and undisputed facts, finding the issues in favor of the Government, appellants bring the case here for review.

Prior to its dissolution in 1951, taxpayer, was inter alia, a retailer of pianos and other musical instruments. It filed its tax returns for the fiscal years ended June 30, 1942, 1943, 1944, 1945, and 1946, on the elective last-in-first-out, or LIFO, method of valuing inventories of pianos provided by Section 22(d) of the Internal Revenue Code of 1939, and paid taxes for said years in excess of the amount of claims for refund.

During the fiscal years ended June 30, 1942, through June 30, 1946, taxpayer suffered involuntary liquidations of its LIFO inventories of pianos. The involuntary liquidations resulted from sales of pianos by taxpayer, coupled with its failure to replace them, due directly and exclusively to prevailing war conditions. The piano inventories involuntarily liquidated were largely replaced between the fiscal years 1946 and 1951 at higher prices.

On September 5, 1950, Congress enacted Public Law 756, amending Section 22 (d) (6) (A) to permit a taxpayer to retroactively (for years subsequent to 1940) elect to invoke the involuntary liquidation relief provisions of that section at such time and in such manner and subject to such regulations as the Commissioner, with the approval of the Secretary, might prescribe.

Pursuant thereto and on May 22, 1951, the Commissioner amended the regulations under Section 22(d) (6) (A), by changing the requirements for making such an election from the time of filing the return, required by previous regulations, to not later than six months after the time of filing the return for the year of liquidation. The amended regulation further provided that a taxpayer could seek extensions of time for filing such elections under Subpart H (Miscellaneous Provisions) 26 C.F.R. Ch. 1, § 29.-6000.

Following the enactment of Public Law 756, and beginning on September 11, 1950, taxpayer and appellants made numerous attempts to come within its provisions, and requested of the Commissioner permission to elect to have the provisions of Section 22(d) (6) (A), as amended, apply to replacements, during the taxable year 1947, of LIFO inventory of pianos previously liquidated involuntarily. The taxpayer and appel-

lants also filed claims for refund for the taxable years 1942 through 1946, based upon the elections made in said claims for replacement of LIFO inventories of pianos involuntarily liquidated during each of these respective years pursuant to the authority granted by Public Law 756. All attempts proved futile, and on May 14, 1953, and again on September 9, 1953, the Commissioner, after consideration of several protests filed in behalf of taxpayer, notified appellants that, because of taxpayer's failure to elect to have the provisions of Section 22(d) (6) of the 1939 Code apply to its liquidation of piano inventories at the time of filing its returns for the years in question, or within six months thereafter, and because no good cause had been shown to support the granting of an extension of time to so elect, its request for extension was denied. On November 1, 1954, the Commissioner of Internal Revenue officially notified appellants of the disallowance of the claims for refund. Acting under Title 28 U.S.C.A. § 134, this action was timely instituted.

Since the taxpayer concededly incurred an involuntary liquidation of its inventories during the years involved, the contention is advanced that the Act of September 5, 1950, granted to it and appellants an *unconditional* right to make a retroactive election and secure the relief provided by Section 22(d) (6) of the Internal Revenue Code of 1939; that the regulation promulgated by the Commissioner, effective May 22, 1951, providing that the election had to be made within six months from the date of filing of the return for the year of liquidation, is repugnant to Public Law 756, being on the face of it arbitrary, contrary to the intention of the legislation, and therefore invalid.

The Government counters with the assertion that the 1950 amendment of Section 22(d) (6) (A) did not grant to the taxpayer an unfettered right to retroactive election; that the Act provides that the election was to be made "at such time and in such manner and subject to such regulations as the Commissioner

with the approval of the Secretary may prescribe, * * *"; that the regulations promulgated by the Commissioner are valid; that in amending the Act, Congress intended to provide a method whereby relief could be granted in any case which appears to involve hardship, and that taxpayer and appellants did not qualify for relief under the hardship provision.

A review of the applicable statutory provisions reveals that in 1939 taxpayers generally were granted permission to use the last-in-first-out (LIFO) method of valuing inventories as an optional method for those who applied for it, Revenue Act of 1939, Ch. 247, 53 Stat. 877, § 219. The Revenue Act of 1942, Ch. 619, 56 Stat. 814, § 119, amended Section 22(d) of the Internal Revenue Code, relating to LIFO method of taking inventories, by adding subsection (d) (6). This amendment gave a taxpayer the privilege of electing to have the relief provisions of that subsection apply when an involuntary liquidation of inventories during the taxable year or years resulted in a decrease in inventories, replacement of which in subsequent years might entail a greater cost than the original depleted inventories. Section 22(d) (6) provided that the provisions thereof relating to involuntary liquidation relief became applicable only if, " * * * at the time of the filing of the taxpayer's income tax return for such year, the taxpayer elects to have the provisions of this paragraph apply and so notifies the Commissioner, * * *" Id. 56 Stat. at page 815. An election by the taxpayer, once made, was irrevocable and was binding for the year of the involuntary liquidation and for all determinations for subsequent years, insofar as they related to the year of liquidation or replacement, Sec. 22(d) (6) (D), Internal Revenue Code of 1939.

Taxpayer employed the LIFO method of valuing inventories of pianos for the years in question; it sustained an involuntary liquidation of inventories, which, because of the war emergency, it was unable to replenish by the end

of the taxable year, but it did not elect to take advantage of the relief provisions contained in 22(d) (6) by notifying the Commission to that effect at the time it filed its tax return for the year 1942 or for subsequent years during which its piano inventories were involuntarily liquidated. It was stipulated in the trial court that the reason no election was made at the time the tax returns were filed was because, "it was impossible for taxpayer to forecast future price levels that would follow involuntary liquidation."

As observed, in 1950, by Public Law 756, the 81st Congress amended Section 22(d) (6) (A), by eliminating the requirement that the election must be made at the time the return was filed, and by providing that it might be made "at such time and in such manner and subject to such regulations as the Commissioner * * * may prescribe, * * *." And the amendment was made applicable to any taxable year beginning after December 31, 1940.

If it was the intention of Congress, as urged by appellants, to grant to all taxpayers who suffered involuntary liquidation of inventories, an *unconditional* right to have their returns reopened back to 1940, there would be much force in the contention that the Commissioner's six-months' regulation contravened the statute and is invalid. However, as we shall presently demonstrate, consideration of all relevant facets of the 1950 amendment and the pertinent regulations, destroys the force of the claim of arbitrariness.

*The Amendment.* By clear and explicit language, the amendment empowers the Commissioner to determine by regulations *when and the conditions under which* the election could be made. Congress, being aware of the circumstances which impelled enactment of Public Law 756, could, and in our judgment would, have simply fixed the time for election at some date subsequent to the passage of the amendment, if it had intended to reopen all involuntary liquidation situations.

*History of Amendment.* From the committee reports, the primary factor motivating Congress to amend the statute may be determined. House Report No. 2756, 81st Cong., 2d Sess., p. 2; S. Report No. 2366, 81st Cong., 2d Sess. p. 2, contain this explanation:

"Present law provides that, in order to have the advantage of such a tax recomputation, the taxpayer must elect to have these provisions apply 'at the time of the filing of the taxpayer's income-tax return' for the year in which the inventory liquidation occurred. However, in some cases taxpayers did not know, at the time the return was filed, that it would be to their advantage to make such an election. For example, there are cases where, at the time of a subsequent investigation of the return, Government agents have segregated into two groups or classes an inventory which the taxpayer considered as consisting of only one class of items. As a result of this segregation it is now held that a liquidation of the inventory of one class of items occurred, although there was no decrease in the number of both classes combined. It is held that, not having made a timely election, the taxpayer cannot apply the excess cost of replacing these items in a subsequent year to reduce the tax for the year in which the liquidation occurred.

"This bill provides that the taxpayer can make the required election 'at such time and in such manner and subject to such regulations as the Commissioner with the approval of the Secretary may prescribe.' Since the amendment is retroactive to taxable years beginning after December 31, 1940, the Commissioner of Internal Revenue can provide relief in any case which appears to involve hardship."

From consideration of the foregoing in its entirety, it seems irrefutable that the amendment was designed, not for the purpose of retroactively opening the door

to permit a review of all returns, regardless of the circumstances, but to authorize the Commissioner, under reasonable regulations, to provide relief in hardship cases.

*The Regulations.* Under authority of the 1950 amendment to the Revenue Act, the Commissioner amended § 29.22(d)—7 of Regulations 111, 26 C.F.R. § 29.22 (d)—7 (as amended by T.D. 5841, 16 F.R. 4931, May 25, 1951), by (1) providing that the election must be made at any time not later than six months after the time of filing his return for the year of liquidation and (2) by making applicable existing § 29.6000 of Subpart H of Miscellaneous Provisions, which authorized the Commissioner, in his discretion, for good cause shown, to grant a reasonable extension of time for making an election if request for such extension is filed with the Commissioner prior to the time fixed for making such election, "or within such time thereafter as the Commissioner may consider reasonable under the circumstances * * * ."

The status of Section 22(d) (6) prior to the 1950 amendment was such that the Commissioner was without authority to extend the time of making the election. Thereunder, the taxpayer was required to elect at the time the return was filed. No relief was provided if the taxpayer failed to comply with this mandatory provision. The 1950 amendment removed this statutory mandate, and when the Commissioner promulgated the six months' regulation, the time of making the election was brought squarely within Subpart H—Miscellaneous Provisions of the regulations, and thereby, the Commissioner, *for good cause shown,* could, in his discretion extend the time for making the election.

Reverting to the committee report, supra, it is urged by appellants that it clearly contemplates relief in this case. They direct our attention to that part of the report which states: "However, in some cases taxpayers did not know, at the time the return was filed, that it would be to their advantage to make such an election." Appellants seize upon this statement in an attempt to demonstrate that Congress intended the amendment to apply to a situation where, as here, the election was not made when the returns were filed because of the inability of taxpayer to forecast future price levels that would follow involuntary liquidation. We are unable to agree. It should be observed that appellants are lifting the statement relied on from context. Its meaning must be determined in light of the whole report, and when so considered, it is obvious, particularly from the example given in the report, that the amendment was designed to afford relief under circumstances not here presented. The statute was not amended for the purpose of extending relief to a taxpayer who failed to elect when tax returns were filed solely because it was not then possible to ascertain whether the election would result in a tax benefit or a tax disadvantage.

Louis Pizitz Dry Good Co. v. Deal, 5 Cir., 208 F.2d 724, affirming D.C., 112 F.Supp. 184, certiorari denied 347 U.S. 952, 74 S.Ct. 676, 98 L.Ed. 1097, although presenting a factual background distinguishable in some respects from the instant case, deals directly with the precise contention of appellants. In that case taxpayer attempted to make the election in September 1948 to apply to the tax years ending January 31, 1942, through January 31, 1947. On appeal, taxpayer insisted that the intention of Congress in amending the act in 1950 was to grant relief in its situation, "and that it was error for the Commissioner to adopt a regulation denying to the taxpayer the right of election authorized by the statute." The Court disposed of this contention in this language at page 728 of 208 F.2d:

"The Legislative history of the statute is contrary, we think, to the taxpayer's contention. It contains no reference to the Commissioner's erroneous position that the 'Lifo' elective inventory method was not available to taxpayers whose inventory records are kept on the basis of the retail inventory method, a posi-

tion finally abandoned in Treasury Decision 5605 approved March 4, 1948. Rather, it refers to hardship cases. Nothing in the legislative history of the statute shows a Congressional purpose to require the reopening of years long closed."

The United States Court of Claims, in Huron Milling Company v. United States, 130 F.Supp. 818, 131 Ct.Cl. 733, certiorari denied 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742, was confronted with a situation where the taxpayer, as here, failed to make the election when it filed its tax return. The contention was advanced that the Commissioner's regulation was invalid because it nullified the intention of the statute, and that the regulation, in order to carry out the intent of the statute, should have allowed the taxpayer at least the time, after the filing of the return, that elapsed before the return was examined and investigated by the revenue agent. The Court disallowed the contention and thereby sustained the validity of the regulation.

Joseph Horne Co. v. U. S., 161 F.Supp. 580, decided May 7, 1958, by the Court of Claims, and after this case was argued, was focused upon the 1950 amendment and the ensuing regulations. That case involved a retail department store, for which type of operation the Commissioner of Internal Revenue had refused to approve tax returns based on LIFO inventories until 1948. It appears that before the promulgation of regulations by the Commissioner following the decision in Hutzler Bros. Co. v. Commissioner, 8 T.C. 14, in 1947, the taxpayer had taken its inventories on a store-wide basis. It contended this method did not disclose involuntary liquidations, because liquidations in some departments were offset by increases in others. Taxpayer argued that its ignorance of the involuntary liquidations excused it for not having made the elections at the time it filed its return. In 1951, following the amendment to the Revenue Code in 1950, taxpayer made the election. Taxpayer, as here, urged that the Commissioner's six months' regulation was invalid because it nullified the statute, and, even if the regulation was valid, the Commissioner's action in refusing to extend the time for election under the general regulation (Subpart H) was arbitrary and capricious. Although by majority opinion, the Court held that under the circumstances, a hardship case was presented, entitling taxpayer to recover for certain of the years involved, the validity of the regulation was upheld. In the dissenting opinion, Judge Whitaker not only found the regulation valid, but felt that under the circumstances of the case, taxpayer could and should have known of the fact of involuntary liquidations, and that no hardship case was presented.

Appellants rely on Ruud Mfg. Co. v. Comm., 10 T.C. 14 (1948), which dealt with retroactive benefits of § 711(a) (3) (B) of the Internal Revenue Code, as amended by the Revenue Act of 1942, § 213 (see 56 Stat. Sec. 213, p. 908), and under which the Commissioner promulgated regulations which set a time limit prospectively for filing claims for refund. In upholding the regulation in question, the court employed this language: "If the Commissioner had set a limitation which was obviously impossible to meet, then his action might be said to be unreasonable or arbitrary and the regulation invalid." It is upon the foregoing dictum that appellants rely to support their claim that the instant regulation is the result of arbitrary action. The opinion lacks persuasiveness, not only for the reason suggested, but because the legislation considered in Ruud, by its terms, was designed to afford relief to all taxpayers filing return for "short taxable year." Unlike the instant situation, relief was not dependent upon the existence of a hardship.

From the foregoing considerations, we hold: (1) the purpose of Congress in enacting Public Law 756 was to provide a method whereby taxpayers could obtain relief in hardship cases; (2) the regulations promulgated by the Commissioner whereby he may grant relief, for good cause shown, accords with Congressional intent, and are reasonable

and valid; (3) the failure of the taxpayer to elect to take advantage of the relief provisions of § 22(d) (6) at the time it filed its returns, solely because it could not forecast whether the election would result in a tax benefit or tax disadvantage, does not constitute the type of hardship from which Congress intended to provide relief.

Accordingly, the judgment of the trial court is affirmed.